UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:  ZYPREXA PRODUCTS LIABILITY
        LITIGATION
----------------------------------------------------------------x

| | |
|---|---|
| **STATE OF MONTANA,** | **MEMORANDUM** |
| | **AND ORDER** |
| **Plaintiff,** | |
| | **04-MD-1596 (JBW)** |
| -against- | **07-CV-1933 (JBW)** |
| | |
| **ELI LILLY & CO.,** | |
| | |
| **Defendant.** | |

----------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

By letter dated January 30, 2009, defendant Eli Lilly & Company ("Lilly") filed a motion seeking an order (1) dismissing all claims of plaintiff State of Montana ("the State") related to non-Medicaid State payors; and (2) either imposing sanctions, in the form of dismissal, predicated upon the alleged failure of the State to produce a complete Medicaid database, or granting a five-month extension of all deadlines set forth in Case Management Order ("CMO") 5(B).  See Letter from Andrew R. Rogoff, Counsel for Lilly, to the Court (Jan. 30, 2009) ("1/30/09 Deft. Letter"), D.E. # 112, at 1.[1]  The State opposes Lilly's motion, contending that "Lilly now requests the State to produce data that does not exist or data not previously requested in this litigation."  Letter from Michael J. Miller, Counsel for the State, to the Court (Feb. 2, 2009) ("2/2/09 Pl. Letter"), D.E. # 113, at 1.

For the reasons that follow, this Court adheres to its prior preclusion orders concerning

---

[1] Unless otherwise noted, docket entries refer to those in State of Montana v. Eli Lilly & Co., No. 07-CV-1933 (JBW) (E.D.N.Y.).

non-Medicaid State payors. Lilly's motion for discovery sanctions is denied.

## DISCUSSION

**I. Preclusion of Claims Relating to Non-Medicaid State Payors**

Lilly contends that this Court's prior Orders preclude the State from pursuing claims related to any non-Medicaid State payor for which discovery has not been provided. See 1/30/09 Deft. Letter, at 1. The State, in turn, represents that it "does not seek damages for other State-run programs outside of Medicaid." 2/2/09 Pl. Letter, at 2. The State is somewhat circumspect, however, as to whether it intends to seek civil penalties in connection with non-Medicaid State payors.

On October 1, 2008, this Court ruled that "the claims of those States that have failed to produce data, documents and/or information pertaining to non-Medicaid benefits will be limited to Medicaid benefits." Minute Entry & Order (Oct. 1, 2008) ("October 1st Order"), D.E. # 86, at 1. To be clear, that Order precludes the State from seeking any relief, including damages and/or civil penalties, in connection with non-Medicaid State payors. Any doubt as to the meaning of this Court's October 1st Order was resolved during a hearing held on October 15, 2008, in which the Court explained that, consistent with its opinion in a related Zyprexa case brought by the State of West Virginia, Lilly is entitled to database discovery to enable it to develop its defenses to claims for civil penalties and to craft arguments concerning the exercise of the trial court's discretion at the penalty phase. See Tr. of Hearing Held on Oct. 15, 2008, at 51-53; see also Memorandum & Order (July 31, 2008), State of West Virginia *ex rel*. McGraw v. Eli Lilly & Co., No. 06-CV-5826 (JBW) (E.D.N.Y.), D.E. # 69, at 3-4 (concluding that the State of West Virginia's narrowing of its case to include only claims for

civil penalties did not render its Medicaid database irrelevant).[2]

The rationale for this Court's decision in the West Virginia case applies with equal force to *any* State payor.[3] If the State intended to seek civil penalties in connection with non-Medicaid State payors, it should have either (1) produced databases for those payors, equivalent to the Medicaid database produced in the case; or (2) timely objected to this Court's October 1st Order.

The time for filing objections has long since passed. Accordingly, this Court adheres to its prior ruling that the State's failure to provide discovery related to non-Medicaid State payors within the Court-imposed deadline for doing so precludes it from seeking *any* relief in connection with those payors.

**II. Sanctions for Incomplete Medicaid Database Production**

In addition to confirmation that the State's claims relating to non-Medicaid State payors have been precluded, Lilly seeks discovery sanctions, in the form of dismissal, for the State's failure to produce a complete Medicaid database. Lilly argues that because the State's database productions of Medicaid antipsychotic pharmacy claims have omitted approximately one-third of prescriber names and/or identifiers, the State has violated CMO 1, which required the State to produce its Medicaid databases without de-identifying prescribers. See 1/30/09 Deft.

---

[2] The above-referenced Order in the West Virginia case was affirmed by the Honorable Jack B. Weinstein on September 10, 2008. See Order (Sept. 10, 2008), State of West Virginia *ex rel*. McGraw v. Eli Lilly & Co., No. 06-CV-5826 (JBW) (E.D.N.Y.), D.E. # 90.

[3] Significantly, the State of New Mexico has construed this Court's October 2008 rulings to mean exactly that. See Stipulation of Dismissal (Dec. 2, 2008), State of New Mexico *ex rel*. Madrid v. Eli Lilly & Co., No. 07-CV-1749 (JBW) (E.D.N.Y.), D.E. # 91, at 1.

Letter, at 1-2.  In this connection, Lilly claims that the State's derelictions have prevented it from identifying the sources from which to collect Medicaid patient medical records.  See id. at 2-3.

Rule 37 of the Federal Rules of Civil Procedure provides a broad array of sanctions for a party's failure to obey a discovery order.  See Fed. R. Civ. P. 37(b)(2).  "The imposition of sanctions under Rule 37 is within the discretion of the district court and a decision to [impose sanctions] for failure to comply with discovery orders will only be reversed if the decision constitutes an abuse of that discretion." John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988) (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976) (per curiam); Argo Marine Sys., Inc. v. Camar Corp., 755 F.2d 1006, 1015 (2d Cir. 1985)).  Under Rule 37, dismissal is appropriate as a discovery sanction only where a party "fails to comply with the court's discovery orders willfully, in bad faith, or through fault."  Id. (citations omitted).  Sanctions in the form of dismissal pursuant to Rule 37 are the "most extreme sanctions available."  Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y. 2002) (citing Nat'l Hockey League, 427 U.S. at 643).

This Court recently decided a similar motion filed by Lilly in the West Virginia case. See Memorandum & Order (Mar. 4, 2009), State of West Virginia ex rel. McGraw v. Eli Lilly & Co., No. 06-CV-5826, D.E. # 141.  As in that case, the Court views the instant motion as nothing more than a delay tactic.

Lilly's own submission indicates that the State has attempted to work with Lilly to cure deficiencies in its pharmacy claims database production; indeed, the State has produced that database no less than three times.  See 1/30/09 Deft. Letter, at 1; see also 2/2/09 Pl. Letter, at

2. As the State has explained to Lilly, many Medicaid pharmacy claims relate to prescriptions written by prescribers who do not participate in Montana Medicaid, do not have Medicaid numbers, and thus were not included in the Medicaid database produced by the State. See id. Ex. F. After that revelation, Lilly suggested that the State's database production should have included Drug Enforcement Administration ("DEA") numbers for all prescribers, which would have captured the missing prescribers. See id. Ex. A, Ex. G. Thereafter, the State agreed to regenerate its pharmacy database to include DEA numbers for all prescribers, regardless of whether or not those prescribers participate in Montana Medicaid. See id. Ex. A.

Lilly maintains that it "does not have the duty, or ability, to ensure the State complies with this Court's orders[,]" and suggests that the State's failure to include prescribers' DEA numbers in its prior Medicaid database productions violated those Orders. See Letter from Andrew R. Rogoff, Counsel for Lilly, to the Court (Feb. 4, 2009) ("2/4/09 Deft. Letter"), D.E. # 114, at 2. But the fact that the State possessed prescribers' DEA numbers does not mean that it was under Court order to produce them; although CMO 1 required the State to identify prescribers in its Medicaid database production, it did not dictate the method by which the State was to do so. See CMO 1, D.E. # 45, at 3. The State chose the most logical identifier – the prescribers' Medicaid numbers – and, when that method proved insufficient, the State, upon Lilly's request, readily agreed to provide the prescribers' DEA numbers.

The crux of Lilly's argument is that it has been prejudiced by the State's failure to identify one-third of prescribers in its Medicaid antipsychotic pharmacy claims database, in that the omissions have delayed the collection of Medicaid patient medical records. The record makes clear, however, that the primary causes for that delay were (1) the election of a new

Attorney General in Montana;[4] and (2) miscommunication between the parties concerning which database production was used to generate the list of records to be collected.[5] See 2/2/09 Pl. Letter, at 4. Neither of those events was solely within the State's control. But more to the point, on December 10, 2008, Lilly advised the State via email that it would notify the State if any problems arose with respect to its ability to use the Medicaid database to identify the records to be collected.[6] See id. Ex. I. Lilly did not do so until nearly one month later when,

---

[4] According to the State, "the parties agreed to request medical records under the signature of the Attorney General for production by January 15, 2009." 2/2/09 Pl. Letter, at 4. A new Attorney General assumed office in Montana on January 5, 2009; given the change in administration, the State represents that it was not able to initiate the records collection process until January 21, 2009. See id.

[5] The letters sent by the State to prescribers requested the records of the wrong patients. See 2/2/09 Pl. Letter, at 4. The State attributes this to the fact that Lilly used a previous database to generate the list of records to be collected, while the State used the most recent production. See id. at 4 & Ex. N. The State maintains that Lilly still has not identified which database it used to generate the list of records to be collected. See id. at 4 & Ex. O.

Lilly does not address the State's representations in its reply, other than to note that it "disagrees with the State's assertion that Lilly is responsible for delays associated with the production of medical records." 2/4/09 Deft. Letter, at 3 n.5. As is apparent from the record, however, the detour in the records collection process was caused by a miscommunication attributable to *both* parties, and not, as Lilly insinuates, the State alone. See 1/30/09 Deft. Letter, at 3.

[6] That email, in its entirety, reads as follows:

> [Lilly] received an updated data base this week. We plan on producing the list of medical records by late tonight if possible. Any objection if we serve it by email tomorrow instead of late tonight – assuming the data base can be searched as we expect?
>
> If there is an issue with the data, *we will let you know*.

2/2/09 Pl. Letter, Ex. I (emphasis added).

on January 8, 2009, it informed the State that it still lacked prescriber identifying information for approximately one-third of antipsychotic pharmacy claims. See 2/2/09 Pl. Letter, at 2. On January 28, 2009, Lilly requested DEA numbers for the missing prescribers, see id. Ex. G, which the State promptly agreed to provide. See id. Ex. A.

Two days later, instead of working with the State to move forward with discovery, Lilly filed the instant motion, which seeks to have a substantial portion of this case dismissed. In light of the foregoing facts, however, the Court is at a loss as to how the State's conduct even remotely approximates the willfulness or bad faith required for the sanction of dismissal. The parties share responsibility for the delay in the records collection process; for that reason, this Court rejects Lilly's attempt to shift the blame for that delay entirely onto the State. Accordingly, Lilly's motion for discovery sanctions is denied.

### III. Extension of Deadlines Set Forth in CMO 5(B)

Lilly alternatively requests a five-month extension of all deadlines set forth in CMO 5(B), "based on the time the State produces a database compliant with the Court's Orders." 1/30/09 Deft. Letter, at 3. Pursuant to CMO 5(B), fact discovery, including physician depositions, is to be completed by April 24, 2009. See CMO 5(B), D.E. # 110, at 3. According to Lilly, "[i]f schedule [*sic*] is not significantly adjusted," there is "no option other than dismissing the State's claims." 1/30/09 Deft. Letter, at 3 n.12.

The Court declines to modify the discovery schedule at this time. Lilly has provided no reason why the delay in obtaining prescriber identifying information for a subset of pharmacy claims necessitates a five-month extension, because there is none. The missing prescriber identifiers involved Medicaid antipsychotic pharmacy claims. See id. at 1. Significantly, only

a fraction of those claims pertain to Zyprexa. More importantly, Lilly does not complain of missing prescriber information with respect to the database that is far more significant to physician depositions: i.e., the medical claims database. Indeed, earlier in the litigation, when the State sought to limit its production to pharmacy claims data, Lilly protested, arguing that medical claims data were more comprehensive than pharmacy claims data and thus more critical to the development of Lilly's defenses. See Deft. Reply to Pl. Mem. Regarding Requested Discovery and Proposed Schedule (May 14, 2008), D.E. # 31, at 4-7. For that reason, this Court ruled that Lilly was entitled to discovery of the medical claims. See CMO 1, D.E. # 45, at 3. Considering Lilly's prior litigation position, its current concerns seem overblown and its demand for dismissal vastly overreaching.

Moreover, it is likely that few, if any, of the unidentified prescribers are participants in Montana Medicaid. See 2/2/09 Pl. Letter, at 2-3 & Ex. F. Given that fact, it is unclear why Lilly would need to obtain those prescribers' identities, or Medicaid patient records in their possession, before moving forward with physician depositions. If those prescribers do not participate in Montana Medicaid, then the relevance of their treatment decisions to this litigation is limited, at best.

In sum, any discovery that is not dependent on the identity of those prescribers could (and should) have gone forward, including (1) the collection of medical records from those prescribers who were previously identified, and (2) prescriber depositions. Accordingly, the Court denies Lilly's motion to extend the deadlines set forth in CMO 5(B).

**CONCLUSION**

For all of the foregoing reasons, this Court adheres to its prior rulings concerning preclusion of claims relating to non-Medicaid State payors.  Lilly's motion for sanctions is denied.

        **SO ORDERED.**

**Dated:**        **Brooklyn, New York**
                  **March 9, 2009**

                                            **ROANNE L. MANN**
                                            **UNITED STATES MAGISTRATE JUDGE**